IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:08-cv-475-TJW |
| BJ SERVICES COMPANY, | § § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion to stay proceedings pending arbitration, filed on June 28, 2010. (Dkt. No. 77.) Plaintiff is opposed to the motion. Oral argument was heard on July 26, 2010. The Court has carefully considered the parties' submissions, the record, and the applicable law. For the following reasons, the Motion is GRANTED.

**I.  BACKGROUND**

This is a patent infringement case. Plaintiff Halliburton Energy Services, Inc. ("Halliburton") initiated this lawsuit against Defendant BJ Services Company ("BJ Services") on December 19, 2008 by alleging that BJ Services infringes Halliburton's U.S. Patent Nos. 5,765,642 and 7,225,869. Discovery is ongoing in this case, depositions have been taken, the parties have prepared infringement and invalidity contentions pursuant to the Local Rules, and a claim construction hearing was recently postponed for two months while the Court considered the present motion to stay.

In August 2009, Baker Hughes, Inc. ("Baker Hughes") and BJ Services publicly announced their intent to merge, subject to shareholder and regulatory approval. On April 28, 2010, Baker Hughes completed its acquisition of BJ Services and BJ Services became a wholly

owned subsidiary of Baker Hughes. In May 2010, counsel for BJ Services became aware of an Intellectual Property Dispute Resolution Agreement between Halliburton and Baker Hughes that governs patent infringement disputes between the parties and later acquired companies (the "1999 Agreement").[1] On June 15, 2010, counsel for BJ Services informed counsel for Halliburton that it intended to invoke the proceedings of the 1999 Agreement. On June 28, 2010, BJ Services filed its present motion seeking this Court to stay these proceedings pending completion of the arbitration required by the 1999 Agreement. There is no dispute that the 1999 Agreement is valid, enforceable, and applicable between the parties in this case. The issue presented to the Court is whether the 1999 Agreement applies to the instant dispute.

## II. LEGAL STANDARDS

"Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate unless the court determines the parties agreed to arbitrate the dispute in question." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998). To determine ascertain whether the parties agreed to arbitrate a particular claim, the Court must determine: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *See Personal Sec. & Safety Sys. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002); *Pennzoil*, 139 F.3d at 1065. "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Pennzoil*, 139 F.3d at 1065, *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). As a consequence, "a valid

---

[1] The 1999 Agreement relied upon is an Intellectual Property Dispute Agreement that was signed by Dresser Industries Inc. ("Dresser") and Baker Hughes in 1999. Halliburton does not dispute that it is a successor of Dresser, or that BJ Services has recently been acquired by Baker Hughes.

2

agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Personal Sec.*, 297 F.3d at 392, *quoting Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Mitsubishi*, 473 U.S. at 626; *AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986). Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable" unless there are grounds to revoke the contract. 9 U.S.C. § 2. Section 3 of the FAA requires courts to stay court proceedings pending arbitration for any issue covered by an arbitration agreement. 9 U.S.C. § 3. Once it is determined that the dispute is subject to an arbitration agreement, then a stay of proceedings is mandatory pursuant to the FAA. *Hornbeck Offshore Corp. v. Coastal Carriers Corp*, 981 F.2d 752, 754 (5th Cir. 1993). State law principles governing the formation of contracts generally apply. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The right to arbitrate disputes is subject to waiver. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009), *citing Miller Brewing Co. v. Fort Worth Distributing Co.,* 781 F.2d 494, 497 (5th Cir. 1986). "[W]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.*, *quoting Miller Brewing*, 781 F.2d at 497. Substantial invocation of the judicial process generally occurs when a party initially litigates a dispute but then reverses course and attempts to arbitrate that dispute. *Id.* "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004).

## III. DISCUSSION

There is no dispute between the parties that the 1999 Agreement is valid and fully enforceable between Halliburton and Baker Hughes. There is no dispute that in the 1999 Agreement, Baker Hughes and Halliburton must resolve all patent and other intellectual property disputes through comprehensive out-of-court procedures that include arbitration. Further, there is no dispute that the 1999 Agreement applies to affiliates of the parties, including "later acquired companies" such as BJ Services. Thus, the parties agree that BJ Services can, in general, invoke arbitration against Halliburton under the 1999 agreement. The dispute centers on whether this specific dispute is covered by the 1999 Agreement.

### A. The Arbitrator Decides the Issue of Arbitrability

A threshold issue is who decides whether the parties agreed to arbitrate the instant dispute. BJ Services argues that the parties agreed that the arbitrator would determine the issue of arbitrability by adopting the AAA rules. Halliburton argues that the initial question of arbitrability is generally reserved for the Court. Halliburton argues that because the 1999 Agreement is silent or ambiguous on the issue of arbitrability, then this Court must decide the issue of arbitrability, not an arbitrator. Halliburton argues that the agreement only incorporates AAA rules related to actual arbitration, not to AAA rules related to threshold jurisdictional questions.

The 1999 Agreement does not have an express clause that provides that the arbitrator decides the issue of arbitrability of any dispute. Rather, Section 2.09(n) of the 1999 Agreement provides that "AAA rules, except as modified by this agreement, shall apply to the arbitration." There are no other provisions in the 1999 Agreement that expressly modify the AAA rules. The

4

AAA rules for a patent dispute are the AAA commercial arbitration rules as supplemented by the AAA patent rules. Rule 7 of the AAA commercial arbitration rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." There are no other provisions in the 1999 Agreement that removes the power to determine arbitrability of this dispute from the arbitrator. The 1999 Agreement does not otherwise limit arbitrability to the "actual arbitration," nor does it exclude AAA Rule 7(a).

Generally, the "question of arbitrability . . . is undeniably an issue for judicial determination." *AT&T Techs.*, 475 U.S. at 649. However, "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options*, 514 U.S. at 943. Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* at 944, *quoting AT&T Techs.*, 475 U.S. at 649. When an arbitration agreement incorporates by reference rules which give the arbitrator the power to rule on arbitration jurisdiction, "the parties' incorporation of those rules evidences a clear and unmistakable intent to delegate the determination of arbitrability to an arbitrator." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006). Likewise, numerous other courts have held that "when a contract contains or incorporates [the AAA rules], it clearly and unmistakably vests the arbitrator, and not the district court, with authority to decide which disputes are subject to arbitration." *See Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Systems, Inc.*, 2009 WL 86704, *5 (E.D. La. Jan. 12, 2009) (collecting cases). The Court cannot ignore this provision in the 1999 Agreement, nor may it read out portions of the agreement. This provision is not a "mere

reference" to the rules, but specifically states that the AAA rules shall apply to the arbitration. By applying the AAA rules to the arbitration, the Court agrees with numerous other courts and finds that the 1999 Agreement applies the rules to all aspects of the arbitration, including the threshold issue of jurisdiction. Thus, the arbitrator, instead of this Court, is vested with the jurisdictional issue of arbitrability.

> **B.    In the Alternative, the Court finds that 1999 Agreement Applies to the Instant Dispute**

Even if the Court were to determine arbitrability, BJ Services argues that a stay is nevertheless mandated, because there is a valid agreement to arbitrate and the dispute falls within the scope of the agreement. BJ Services argues that the 1999 Agreement unambiguously applies to later acquired companies, contains no limitation that excludes pre-existing disputes of an acquired company, and does not limits its application to later arising disputes. Halliburton argues that the 1999 Agreement does not apply to a case where a litigant involved in an existing patent infringement case is acquired by a party after litigation has already been pending for 18 months. Halliburton argues that the 1999 Agreement sets up a procedure that is intended to take place prior to the inception of litigation and as a complete substitute for litigation. Halliburton argues that the 1999 Agreement should not be construed to cover disputes among companies that are not affiliates of the parties at the time the dispute arises. Halliburton argues that at the time this claim arose, BJ Services was not a party, affiliate, or related company as it had not yet been acquired by Baker Hughes. Thus, when Halliburton filed this case it did not bring a claim against a Party to the 1999 Agreement, as that term is defined by the agreement. Halliburton argues that had Baker Hughes acquired BJ Services before this claim arose, then the alternative dispute resolution process would be applicable.

Halliburton makes only one argument that the arbitration agreement does not apply to the dispute: the dispute was pending when BJ Services was acquired. In other words, because the dispute was a pre-existing dispute when Baker Hughes acquired BJ Services, then it does not apply to the 1999 Agreement. The Court rejects this argument because the 1999 Agreement contains no such temporal limitation for disputes. The 1999 Agreement by its terms includes all intellectual property disputes regardless of when the dispute arises or the identity of the affiliate involved, including for "later acquired companies." The 1999 Agreement expressly recognizes that it applies to "pending lawsuits, disputes, and/or other proceedings alleging infringement" and those "that might arise in the future." Thus, the agreement specifically contemplates the notion that it applies to disputes at any stage, whether they have arisen, been asserted, or are involved in pending litigation. Halliburton's argument that the agreement does not apply because the instant dispute was a pending litigation at the time BJ Services was acquired is contradicted by the language of the 1999 Agreement, which expressly covers "pending lawsuits."

As ruled previously, the Court finds that the arbitrator, instead of this Court, has the jurisdictional issue of arbitrability. In the alternative, assuming that this Court must decide the arbitrability of the instant dispute, the Court finds that the parties intended the 1999 Agreement to cover this dispute. When Baker Hughes acquired BJ Services as an affiliate, an intellectual property dispute arose between BJ Services and Halliburton. The 1999 Agreement was entered into by sophisticated parties, it unambiguously applies to any affiliate and later acquired companies, and it does not limit its application to later arising disputes or exclude pre-existing disputes of later acquired companies. The Court finds that Halliburton agreed to arbitrate this dispute, that there is a valid agreement to arbitrate this dispute, and that the dispute falls within

7

the scope of the 1999 Agreement. At the very least, any doubts should be resolved in favor of arbitration. *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *see also Mitsubishi Motors*, 473 U.S. at 626; *AT&T Techs.*, 475 U.S. at 650.

**C.     Waiver**

Alternatively, Halliburton argues that BJ Services has waived its right to enforce the 1999 Agreement by substantially invoking the litigation process over the past ten months to the detriment of Halliburton. Halliburton argues that after BJ Services and Baker Hughes announced their intent to merge, that Halliburton expended considerable time, money, and energy preparing this case for trial without any indication by BJ Services that it intended to trigger the dispute resolution procedures of the 1999 Agreement once the acquisition closed. Further, after the April 28, 2010 merger, Baker Hughes and BJ Services made no mention of the 1999 Agreement until June 15, 2010, 18 months after Halliburton filed the present case and nearly ten months after Baker Hughes announced its acquisition of BJ Services. BJ Services argues that its actions have not amounted to waiver.

The Court rejects Halliburton's arguments that BJ Services has waived its right to enforce the 1999 Agreement. First, the Court rejects Halliburton's contentions that BJ Services should have informed Halliburton that it intended to invoke the 1999 Agreement at the time the merger was announced in August 2009. BJ Services did not know, and was not in a position to know, of the arbitration agreement until after the merger was completed. Counsel for BJ Services did not even obtain the 1999 Agreement until May 2010, after the merger closing. Further, even if BJ Services had known of the arbitration agreement prior to the merger, informing Halliburton,

which already knew of the agreement, would have accomplished nothing because there was no assurance that the merger would close and it had no ability to enforce the agreement. Second, the Court rejects Halliburton's contentions that it would be prejudiced if forced to abandon this litigation. Halliburton has a hard time arguing prejudice when it knew about the 1999 agreement during the entire litigation process and before BJ Services became aware of the agreement. Further, the AAA arbitration rules for patent disputes provide for similar types of disclosures that the parties have completed in this case. This overlap of discovery in the arbitration largely mitigates any potential harm that Halliburton might suffer by duplicative or unnecessary discovery. Overall, BJ Services did not substantially invoke the judicial process after it became aware of the agreement to the detriment or prejudice of Halliburton. *See Nicholas*, 565 F.3d at 907.

The Court finds that Halliburton has not met its heavy burden of proof to show waiver. *See Petroleum Pipe Am. Corp. v. Jindal Saw, Ltd*, 575 F.3d 476, 480 (5th Cir. 2009); *Republic Ins.*, 383 F.3d at 344. Halliburton has not met its heavy burden to show an "overt act in court" by which BJ Services "evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* The Court finds that BJ Services has not waived its right to enforce the 1999 Agreement, particularly with the view that a waiver of arbitration is not a favored finding. *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) ("[t]here is a well-settled rule in this circuit that waiver of arbitration is not a favored finding, and there is a presumption against it").

9

## IV. CONCLUSION

The Court finds that the 1999 Agreement vests the arbitrator, instead of this Court, with the jurisdictional issue of arbitrability. In the alternative, the Court finds that the parties intended this dispute to covered by arbitration under the 1999 Agreement. Further, the Court finds that BJ Services has not waived its right to enforce the 1999 Agreement. Thus, the Court finds that the motion to stay should be GRANTED. Accordingly, the Court stays these proceedings pending completion of the arbitration.

IT IS SO ORDERED.

SIGNED this 28th day of July, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE